AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

TRUE COPY I CERTIFY
ATTEST: May 02, 2024
NATHAN OCHSNER, Clerk of Court
By: /s/ Antonio B. Banda
                                    Deputy Clerk

| United States of America | ) |
|---|---|
| v. | ) |
| Franyerson Pujols Reynoso | ) Case No. 4:24-mj-196 |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| Defendant | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*  Franyerson Pujols Reynoso
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. 1203 Hostage Taking, namely that the defendant intentionally seized or detained another person, and threatened to kill, injure, or continue to detain that person; the defendant's purpose was to compel a third person to do an act or from doing an act as an explicit or implicit condition for the release of the person detained, and conspiracy to commit same in violation of 18 U.S.C. 371.

Date: 05/02/2024

*Dena Palermo*
Issuing officer's signature

City and state:   Houston, Texas

United States Magistrate Judge Dena Palermo
Printed name and title

---

**Return**

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____
at *(city and state)* _____ .

Date: _____

Arresting officer's signature

Printed name and title

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
May 02, 2024
Nathan Ochsner, Clerk of Court

United States of America
v.
Franyerson Pujols Reynoso

Case No. 4:24-mj-196

Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  04/03/2024  in the county of  Harris  in the  Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1203<br>18 USC 371 | 18 USC 1203 Hostage Taking, namely that the defendant intentionally seized or detained another person, and threatened to kill, injure, or continue to detain that person; the defendant's purpose was to compel a third person to do an act or from doing an act as an explicit or implicit condition for the release of the person detained, and conspiracy to commit same in violation of 18 USC 371. |

This criminal complaint is based on these facts:
See attached affidavit.

TRUE COPY I CERTIFY
ATTEST: May 02, 2024
NATHAN OCHSNER, Clerk of Court
By: s/ Antonio B. Banda
Deputy Clerk

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Patrick Lewis
Printed name and title

Sworn to by telephone.

Date: 05/02/2024

_____
Judge's signature

City and state: Houston, Texas

United States Magistrate Judge Dena Palermo
Printed name and title

**4:24-mj-196**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Patrick Lewis, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since 2019. I have conducted and assisted in investigations pertaining to domestic and international terrorism, public corruption, violent crime, organized crime, and gangs. I am currently assigned to the FBI Violent Criminal Squad whose focus is on complex criminal investigations targeting violent crime. Based on both my training and my participation in prior investigations into complex criminal organizations, I am familiar with the patterns of criminal activity and criminal enterprises that engage in crimes such as kidnapping for ransom, bribery, sex trafficking, fraud, and distribution of narcotics in furtherance of a criminal enterprise.

2.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this matter.

STATUTORY AUTHORITY

3.     Based on the facts set forth in this affidavit, there is probable cause to believe that the Defendants have violated Title 18, United States Code, Section 1203 (Hostage Taking) and Title 18, United States Code, Section 371 (Conspiracy) (the "TARGET OFFENSES").

PROBABLE CAUSE

4.     On March 27, 2024, the Harris County Sheriff's Office received a walk-in complaint from R.O. detailing the kidnapping of her boyfriend W.M. The case was initially investigated by Harris County Sheriff's Office, which requested FBI assistance on or about March 28, 2024.

5.     On March 28, 2024, the FBI interviewed R.O. R.O. provided the following information: on March 19, 2024, W.M., R.O.'s boyfriend, traveled to Michoacan, Mexico to visit his sick mother. W.M. contacted R.O. via WhatsApp and advised he had arrived in Michoacan, Mexico.

6.     On March 23, 2024, W.M. was set to return to the United States. On March 25, 2024, at approximately 2:41 AM, R.O. received a WhatsApp message from W.M. saying that he had arrived in San Antonio, TX.

1

7. On March 25, 2024, at approximately 3:32 PM, R.O. received a phone call from M.H., W.M.'s sister. M.H. asked if R.O. had heard from W.M.; R.O. told her she had not. On March 25th, 2024, at approximately 7:11 PM, R.O. received a call from unknown persons using phone number -6868. The unknown male caller advised R.O. that W.M. had been kidnapped and said if she notified law enforcement W.M. would be killed. The unknown male caller also said that if R.O. notified law enforcement, they would come for her and that they knew R.O.'s address.

8. On March 25, 2024, at approximately 7:14 PM, R.O. received a photograph via text message from phone number -6868 depicting a person R.O. recognized to be W.M. lying face down with his hands bound behind his back with zip-ties and five guns pointed at his head.

9. On March 28, 2024, the FBI interviewed M.H. M.H. provided the following information: on March 19, 2024, W.M. traveled to Michoacan, Mexico to visit his sick mother. On March 23, 2024, W.M. was set to return to the United States.

10. M.H. did not know how W.M. was traveling but advised he was entering the United States illegally. On March 25, 2024, M.H. received a call from persons unknown using phone number -6868. M.H. did not want to answer the call, so she had her husband, O.D., answer. The unknown male caller advised O.D. that M.H.'s brother W.M. had been kidnapped and demanded $15,000 or W.M. would be killed. The unknown caller advised O.D. to send the ransom payment via Zelle.

11. On or about March 26, 2024, M.H. received a series of text messages. The text messages provided M.H. with Zelle account information which M.H. understood to be accounts to which to send the money transfers to pay the ransom. One of the Zelle account identifiers M.H. received was Franyerson Pujols: +17179801629.

12. On or about March 26, 2024, M.H. transferred $2,000 through her Bank of America account to one of the Zelle accounts. Family members of M.H. transferred $2,000 to another designated Zelle account that day as well.

13. On or about March 28, 2024, M.H. received multiple phone calls from phone number -6868. During these calls, O.D. spoke with an unknown person demanding money or W.M. would be harmed. During several of the phone calls, O.D. spoke with W.M., who asked O.D. to pay the money for his return.

14. As of April 2, 2024, M.H. and O.D. had made two additional Zelle payments bring the total ransom payments to the suspects to approximately $6,035.

15. On March 28, 2024, the FBI interviewed S.F., friend/roommate to R.O. and W.M. S.F. provided the following information: S.F. was contacted via telephone by an unknown person who claimed to be a family member of another kidnapping victim who was kidnapped along with W.M. The unknown person gave S.F. the phone number -9472 and advised they received a call from a person on this number who demanded ransom money for the return of their family member. S.F. called the -9472 Number and spoke with an unknown male who advised in sum and substance, he was a cop, and to just pay the money or your family member will be killed.

16. S.F. recorded part of her conversation with the unknown male. In sum and substance, the male on the recording said "they're not going to kill him. They are beating him up but they're not going to kill him."

17. Investigators were able to identify the address from which the -6868 number had been used as 4309 Harby Street, Houston, TX 77023-0000. This address is located in the Southern District of Texas.

18. On April 1, 2024, investigators contacted the record owner of 4309 Harby Street. The owner said that they rented the property through Booking.com and advised that it had been rented from March 31, 2024-April 4, 2024. The owner advised that the renter requested an early check-in on March 31, 2024, and requested to cancel the cleaning service scheduled for March 31, 2024.

19. On April 1, 2024, the owner told the FBI that they had Nest cameras at the property. The owner provided a video clip to investigators via email from March 31, 2024 at approximately 11:35 AM, when the renters arrived. The video clip depicts an SUV park in the front driveway of 4309 Harby Street and shortly after thirteen individuals enter the residence. One of the males wearing an orange shirt and darks pants exits the rear passenger compartment of the SUV and is motioned into the residence by another unknown male on camera. The male wearing an orange shirt and dark pants appears to be W.M. It appears from the video that W.M. was not free to leave the scene.

20. The owner provided investigators access to the live Nest video feed and saved videos at 4309 Hardy Street. On March 31, 2024, at approximately 6:55 PM, an unknown male wearing a black T-shirt and blue jeans is captured on camera exiting a black sedan parked in the driveway of 4309 Hardy Street. As the unknown male approaches the front door of the residence, he reaches his right hand into the front of his waistband and pulls out a dark object consistent with that of a firearm, before walking off camera.

21. On April 2, 2024, M.H. and O.D. communicated with one of the suspects. The suspect told M.H. and O.D. that if the hostage takers did not receive payment by 3:30 PM on April 2, W.M. would "have a bad day."

22. On April 2, 2024, at 6:21 PM, United States Magistrate Judge Dena Palermo signed a search warrant for 4309 Harby Street.

23. On April 3, 2024, at approximately 1:31 AM, two males exited the front door of 4309 Harby St., Houston, TX 77023, and entered a dark blue Mercedes sedan parked in the driveway of the residence. At approximately 1:33 AM, the dark blue Mercedes exited the driveway and drove eastbound away from the residence. Active surveillance on the dark blue Mercedes followed the vehicle to Chicas Cabaret, 9924 North Fwy, Houston, TX 77037. Surveillance observed the two males exit the vehicle and enter the listed establishment.

24. On April 3, 2024, at approximately 2:18 AM, FBI Hostage Rescue Team (HRT) executed the search warrant at 4309 Harby Street. Keven ARMANDO MARCANO was called out of the residence and taken into custody in the front yard. HRT members entered the residence and found Elloy M. FIGUEROA PEDRAZA in the back laundry room/bathroom area of the house, called out, and arrested.

25. W.M. was found in the hallway between the living room and bedroom. D.T., F.A. and S.H. were located in the back laundry room/bathroom area and recovered. Later interviews conducted by the FBI confirmed these three individuals were kidnapping victims.

26. During the initial entry of the search warrant a black with partial lower red grip firearm was located in the laundry room between the washer/dryer and the wall. This firearm appears to match one of the firearms pointed at W.M. head in the text message picture R.O. received in connection with a ransom demand.

27. On April 3, 2024, at approximately 3:00 AM, the two males observed occupying the dark blue Mercedes exited Chicas Cabaret. The two males entered the dark blue Mercedes and began traveling south on North Fwy. A marked Harris County Sheriff's Office vehicle conducted a vehicle stop on the vehicle on North Fwy. in front of 9839 North Fwy, Houston, TX 77037. Gerson ADONY CHICAS ALFARO (driver) and Luis ENRIQUE DURAN MONTILLA, front passenger, was taken into custody.

28. On April 3, 2024, the FBI interviewed W.M. (Victim 1). W.M. provided the following: W.M. went back to Mexico about a month ago to see his mom because she was sick. When it was time to return to the U.S., W.M. described his method of travel as "we contacted the man that was transporting us, I came on the bus and stayed in a house near the border," after which W.M. crossed over into the United States without inspection.

29. W.M. walked for two nights and spent a night in the brush. A car came to pick W.M. up at night. W.M. got into the car voluntarily, believing it to be a ride associated with his scheduled illegal entry into the United States. W.M. crossed the border with four other people, three of whom were the same individuals recovered during the April 3, 2024 FBI search warrant execution at 4309 Harby St., Houston TX, 77023.

30. W.M. and the others were under the impression they were going to their destination. After they were in the car driving for a while, the man riding in the front passenger seat pulled a gun on W.M. and the others. W.M. was shown a picture of the person known to be K. MARCANO and positively identified this as the front passenger of the vehicle. W.M. advised K. MARCANO was with him for the duration of the time he was held captive.

31. They took W.M. and the others to a house. They took W.M.'s and the others' clothes and took him up to the second floor and told him to shower.

32. After they showered, the kidnappers started calling the victims' families. The kidnappers instructed W.M. and others to tell their family members that they arrived in the U.S. and that it was going to be a $15,000 ransom before they could be returned to their families. If the

4

families did not pay the ransom, the kidnappers were going to kill W.M. and the other migrants. They specifically told W.M. they were going to cut his fingers or his ear off.

33. The kidnappers were using cellphones and appeared to be using multiple cellphones. The kidnappers had their phones on them the whole time. The kidnappers instructed W.M. to talk to his family via telephone and coached him on what to say.

34. W.M. advised the primary kidnapper conducting the calls to the family was a male who went by the name "Siete." "Siete" told W.M. not to look at his face or else he would beat W.M. W.M. was shown a picture of G. ALFARO and confirmed it was the person her knew as "Siete."

35. W.M. was then moved to another house and that is where the captors beat all the victims. W.M. described the beatings as slapping him, hitting him with shoes in the back of the neck. W.M. thought they were in the second location for approximately one day.

36. The kidnappers then moved the victims to a third location, where they were held for a couple of days. The kidnappers tied W.M. up, slapped him around, and put multiple guns to his head. W.M. was shown the picture R.O. provided the FBI of W.M. bound and confirmed it was a picture of himself. W.M. was left bound for approximately three hours. After W.M. was untied, "Siete" walked in and said he is going to kill him. The victims stayed there for several days and were then moved to the last house from which they were rescued.

37. When they got to the final house (4309 Harby Street, Houston, TX 77009), the kidnappers instructed W.M. to call his family again and tell them to pay up or else they would kill him. The kidnappers separated W.M. from everyone else because his family was not paying the ransom and because they believed his family was talking to law enforcement. The kidnappers said that that was why they were going to kill W.M.

38. W.M. believed he would be killed if he fled the residence.

39. W.M. described being transported to the last location in a beige Chevrolet Tahoe. W.M. advised there was another victim who was transported to the third house in a black Mercedes by "Siete", aka G. ALFARO. That victim was able to escape on foot.

40. W.M. advised it was the same kidnappers the whole time. Sometimes they would have their friends come over.

41. W.M. positively identified a photograph of Citlali MARTINEZ-MORALES as one of the kidnappers. W.M. advised she went by the name "lilly', pointed a gun at W.M., and was close with G. ALFARO.

42. W.M. positively identified a photograph of Franyerson PUJOLS REYNOSO ("REYNOSO") as one of the kidnappers who went by the name "Flocko." W.M. said REYNOSO pointed a gun at him.

5

43. On April 3, 2024, the FBI interviewed D.T. (Victim 2) utilizing a Spanish-English Language Specialist. D.T. provided the following information: D.T. paid someone to transport him into the United States illegally. D.T. was supposed to pay $9,500 when he arrived at a pre-planned house in the United States. D.T. provided a similar account to that of W.M. of being picked up near the border by vehicle with four to five other people. The driver and passenger got to San Antonio and stopped at a store to buy something. When they got out of the car, D.T. realized the driver and passenger were armed with firearms. At that time, D.T. knew something was wrong. The driver and passenger did not speak to D.T. or the other occupants. The driver and passenger took D.T.'s and the other occupants' phones.

44. D.T. said the threats began when the kidnappers began calling the victims' families. When the kidnappers called his dad and demanded ransom, D.T.'s dad gave the kidnappers number to an unknown person who called the kidnapper. D.T. was smacked across the face while on the phone with his dad for his dad giving out the number. D.T. felt like he would be killed many times.

45. D.T.'s father paid the full ransom amount of $15,000 on Wednesday night. The kidnappers did not release D.T. after receiving the ransom.

46. D.T. positively identified a photograph of G. ALFARO as one of the kidnappers and provided the following: G. ALFARO went by the name "Siete" or "7." G. ALFARO was the one in charge of the kidnappers. G. ALFARO was the one who made the phone calls to the families. D. TEODORO overheard G. ALFARO threaten other victim's families if the ransom was not paid. G. ALFARO was in charged of the money and always pointing firearms at the victims.

47. D.T. positively identified a photograph of C. MARTINEZ-MORALES as being one of the kidnappers. D.T. advised she went by the nickname "Lally" or "Lilly." C. MARTINEZ-MORALES would point firearms at the hostages. D.T. advised she was in charge of the hostages when the other kidnappers left. The kidnappers gave C. MARTINEZ-MORALES a firearm when she stayed with the hostages. D.T. heard the other kidnappers tell her if the hostages try to run, shoot them.

48. D.T. positively identified a photograph of REYNOSO as being one of the kidnappers who was there from the beginning of the ordeal. D.T. said REYNOSO went by the nickname "Flocko." D.T. said REYNOSO was very serious and did not talk. REYNOSO guarded the hostages when the other kidnappers were not around. REYNOSO did not point a firearm at D.T. REYNOSO was at the house from which D.T. and the other hostages were rescued.

49. On April 3, 2024, the FBI interviewed F.A. (Victim 3). F.A. gave a story similar to that of Victim 1 and Victim 2 regarding their entry into the United States. F.A. positively identified a photograph of E. PEDRAZA as one of the kidnappers and provided the following: E. PEDRAZA was one of the guys there all the time. E. PEDRAZA made phone calls demanding money from the victim's families. When the police came to the last house on April 3, 2024, E. PEDRAZA came to the back laundry room area of the residence and threw a pistol there. E. PEDRAZA put a gun to F.A.'s head and threatened him if he did not pay.

6

50. F.A. positively identified a photograph of G. ALFARO as one of the kidnappers and provided the following: G. ALFARO was the boss of the kidnappers when the big boss "Cuba" was not around. G. ALFARO would collect all the money from the kidnappers. G. ALFARO always wore a mask.

51. F.A. positively identified a photograph of REYNOSO as one of the kidnappers. F. REYNOSO did not hit F.A. REYNOSO told F.A. that this was just a job and he felt sorry for the hostages. F.A. said REYNOSO carried a gun and prevented the hostages from fleeing.

52. S.H. (Victim 4) positively identified a photograph of G. ALFARO as one of the kidnappers and provided the following: G. ALFARO was the second guy in charge. G. ALFARO threated S.H. with a gun. G. ALFARO made S.H. make ransom calls to his family.

53. S.H. positively identified a photograph of C. MARTINEZ-MORALES as one of the kidnappers who went by the name "Dally." S.H. advised she always had a gun on her, but did not point her gun at S.H.

54. S.H. positively identified a photograph of REYNOSO as one of the kidnappers. S.H. said REYNOSO threatened him with a gun.

55. On April 4, 2024, C. MARTINEZ-MORALES contacted the FBI's Houston field officer and said that on March 31, 2024, she was at a party at 4309 Harby Street, Houston, TX, had gotten really drunk and left her wallet containing her passport and other personal belongings at the house. (A search of the house after the hostages were rescued did, in fact, turn up a bag with items belonging to C. MARTINEZ-MORALES.) C. MARTINEZ-MORALES did not accuse anyone of stealing the items, she just wanted them back. C. MARTINEZ-MORALES said she was not available to pickup the items until the following week and would contact the FBI when available.

56. On April 17, 2024, an FBI Special Agent called C. MARTINEZ-MORALES at the number she provided with no answer.

57. On April 22, 2024, C. MARTINEZ-MORALES contacted FBI Houston and said she was available and wished to collect her items.

58. On April 22, 2024, at approximately 3:05 PM, the FBI interviewed C. MARTINEZ-MORALES at the FBI Houston Field Office. C. MARTINEZ-MORALES confirmed she was at 4309 Harby Street, Houston, TX when the FBI came to the house. C. MARTINEZ-MORALES said she jumped out of the bedroom window and fled the residence on foot before being picked up by an Uber with a person she knew as "Flocko." C. MARTINEZ-MORALES advised she knew there were multiple hostages being held against their will. C. MARTINEZ-MORALES advised she saw G. ALFARO assault W.M. by slapping him in the face on at least one occasion.

59. C. MARTINEZ-MORALES stayed at two Airbnb houses with the other kidnappers and hostages. At the first Airbnb, C. MARTINEZ-MORALES saw the hostages have their clothes stripped and phone numbers taken from their phones. C. MARTINEZ-MORALES walked in and saw the picture of W.M. bound on the ground being taken by G. ALFARO and everyone else there holding guns to W.M.

60. C. MARTINEZ-MORALES said her phone was used to make ransom calls to the hostages' families. C. MARTINEZ-MORALES would get W.M. and bring him to G. ALFARO so G. ALFARO could make ransom calls to W.M.'s family. C. MARTINEZ-MORALES said a firearm would be left with her when the other kidnappers left her with the hostages. C. MARTINEZ-MORALES said she did not point the firearm at the hostages.

61. C. MARTINEZ-MORALES positively identified a photograph of REYNOSO from the Nest camera footage as the person she knew as "Flocko." C. MARTINEZ-MORALES positively identified a Pennsylvania DMV photograph of REYNOSO as the same "Flocko." C. MARTINEZ-MORALES said she fled the 4309 Harby Street house with REYNOSO when the FBI arrived to rescue the hostages. C. MARTINEZ-MORALES also said REYNOSO thereafter left on a Greyhound bus to an unknown destination.

62. On April 22, 2024, C. MARTINEZ-MORALES signed an FBI Consent to Search for one white iPhone seized at 4309 Harby Street and a light blue iPhone C. MARTINEZ-MORALES brought with her to the FBI Houston Field Office. C. MARTINEZ-MORALES confirmed that both devices belonged to her. Both devices contain a saved contact "flackooooo"; mobile: (717) 980-1629.

63. On April 12th, 2024, the FBI obtained a search warrant for historical location information associated with the cellular telephone assigned call number: (717) 980-1629. Historical GPS records showed the device assigned call number -1629 was in the area of 4309 Harby Street on March 31, April 1, April 2 and April 3, 2024.

64. Based on the foregoing, your Affiant believes there is probable cause that on or about April 3, 2024, REYNOSO committed Hostage Taking in violation of 18 U.S.C. § 1203(a)(2) and Conspiracy in violation of 18 U.S.C. § 371.

_____
Patrick Lewis
Special Agent, Federal Bureau of Investigation

Sworn to and subscribed to by telephone on this the 2nd day of May, 2024 and I find probable cause.

_____
Honorable Dena Palermo
United States Magistrate Judge

8

TRUE COPY I CERTIFY
ATTEST: May 02, 2024
NATHAN OCHSNER, Clerk of Court
By: s/ Antonio B. Banda
                              Deputy Clerk